# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Lena M. Osgood, ) | C/A No. 2:08-CV-03386-DCN |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | **ORDER AND OPINION** |
| ) | |
| Defendant. ) | |

This matter is before the court on Magistrate Judge Robert Carr's report and recommendation that this court reverse the decision of the Commissioner denying plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42. U.S.C. §§ 410-33, 1381-83. The record includes a report and recommendation of the United States magistrate judge made in accordance with 28 U.S.C. § 636(b)(1)(B). Defendant has filed written objections to the report and recommendation. For the reasons set forth below, the court adopts the report and recommendation of the magistrate judge and reverses and remands the case for further consideration by the Commissioner.

## I. BACKGROUND

Plaintiff first filed for DIB and SSI in April 2004 alleging she became disabled in December 2003 due to chronic asthma, back, hip and knee problems, acid reflux, hypertension, and panic attacks. Tr. 17. Her application was denied initially and upon reconsideration. Tr. 5-7, 14-22. Plaintiff requested an administrative hearing which was

held on October 19, 2005. Tr. 219. On September 6, 2006, the administrative law judge (ALJ) issued a decision finding plaintiff was not disabled because she could perform a range of light work and was capable of performing past relevant work. Tr. 20-21. The ALJ also found that plaintiff was not disabled as defined in the Social Security Act, from December 26, 2003, through the date of the decision. Tr. 21. On July 29, 2008, the Appeals Council rendered the Commissioner's determination final when it denied plaintiff's request to review the ALJ's decision. Tr. 5-7.

Plaintiff was born on August 23, 1951. Tr. 221. She is a high school graduate. Tr. 222. Plaintiff's past work experience includes work as a housekeeper, a housekeeping supervisor, and as a desk clerk for a resort. Tr. 46. Plaintiff alleges that she became disabled on December 26, 2003, due to multiple symptoms, including chronic asthma, back, hip and knee problems, acid reflux, hypertension, and panic attacks. Tr. 17.

Plaintiff first underwent a coronary angiography on February 21, 2002, due to complaints of chest discomfort. Tr.103. The Discharge Summary noted that there was no evidence of coronary artery stenosis in the left side and normal left ventricular systolic function. Tr. 103. Between January and October 2003, plaintiff received treatment from Patrick Jordan, M.D., for hypertension, back and leg pain, depression, and asthma. Tr. 112-19. In late June 2003, Dr. Jordan noted that plaintiff had recently been hospitalized for asthma, and prescribed Advair and Albuterol. Tr. 116. In early August, Dr. Jordan prescribed Paxil for anxiety and depression. Tr. 115. During August and September 2003, Dr. Jordan noted that plaintiff's hypertension was controlled and her asthma was

stable. Tr. 113, 114.

During September 2003, plaintiff was transported to the Hilton Head Medical Center by paramedics after she experienced chest pain, accompanied by a panic attack and shortness of breath. Tr. 126 An electrocardiogram (EKG) was obtained, which revealed a normal sinus rhythm, with no evidence of ischemia or infarct. Tr. 131. The treating physician noted that plaintiff was awake, alert and fully oriented; her lungs were clear; her back was nontender; her neck was supple and had full range of motion. Tr. 131. He also noted that plaintiff commented that her pain improved once she took Paxil. Tr. 132. It was his impression that plaintiff's symptoms were anxiety-related and discharged her with instructions to follow up with her personal physician. Tr. 132.

During October 2003, plaintiff presented to Dr. Coly for evaluation before undergoing a tonsillectomy. Tr. 147. Plaintiff had normal sinus rhythm, a negative Bruce protocol stress test, and an unremarkable stress Sestamibi scan. Tr. 145-46.

During February and March 2004, plaintiff was attended by Gaston Perez, M.D., for complaints of back pain, hypertension and asthma. Tr. 148. She received a prescription of Paxil for anxiety and depression. Tr. 149-152.

In July 2004, plaintiff returned to Dr. Jordan and reported that she had experienced lower left back pain, which radiated into her left leg, for the past three months. Tr. 111. Plaintiff stated that she had experienced intermittent back pain since being involved in a motor vehicle accident during the 1980's. Tr. 111. Upon examination, a straight leg raise was positive for back pain on the left. Tr. 111. Dr. Jordan treated plaintiff's back pain with a Medrol Dosepak (a steroid used to treat

3

inflammation). He stated that he would consider an MRI if her condition did not improve and advised her to contact his office if her symptoms did not improve within three to five days. Tr. 111. Dr. Jordan also noted that plaintiff's hypertension, depression and asthma were stable, and stated that she should continue her current medications. During August 2004, Dr. Jordan advised Allstate Life Insurance Company that he had never put Plaintiff on disability. Tr. 109.

In September 2004, plaintiff went to Michael K. Mikkelson, M.D., for a Vocational Rehabilitation examination. Tr. 154-56. She told Dr. Mikkelson that she had two main problems: asthma and pain in her arms, legs and back. Tr.154. She rated the pain as a constant nine out of ten (ten being the most severe). Tr. 154-55. She told Dr. Mikkelson that the pain woke her up at night. Tr. 155. Plaintiff also stated that in addition to taking asthma medication, she used an Albuterol inhaler about once a day and occasionally at night. Tr. 154. Plaintiff stated that she could not walk up a flight of stairs without shortness of breath and that she was unable to do any housework due to shortness of breath and pain. Tr. 154.

Dr. Mikkelson observed that plaintiff was alert, oriented, and appeared in no acute distress. Tr. 155. When he examined her lungs, he found good breath sounds bilaterally, with no rales, rhonchi, or wheezes. Tr. 155. He noted that her neck was supple without adenopathy and in his examination of her heart he found regular sinus rhythm without murmurs. Tr. 155. He noted that plaintiff stated she has pain in her left upper quadrant of her abdomen and believes it is due to gallstones that she was told she had. Tr. 155. Dr. Mikkelson further stated that plaintiff had no trouble getting on and off

4

the examining table. Tr. 155. However, when she sat up she did express some pain. Tr. 155. He made note that "she could bend at her waist and touch her lower shins, although she complained about back pain when she did this." Tr. 155. He stated that she seemed capable of managing her own affairs, and when she left the office she had a very normal gait. Tr. 155. He concluded by stating that she never appeared to be short of breath during the examination or when leaving the office. Tr. 156.

X-rays of plaintiff's chest showed clear lungs. Tr. 158. X-rays of her lumbosacral spine showed the vertebral body heights were well maintained with no fracture or subluxation. Tr. 158. The x-ray did show a mild disk space narrowing at L4-5 and L5-S1 vertebrae. Tr. 158.

Plaintiff visited Sami Supan, M.D., for an evaluation during March 2005. Tr. 175. She reported pain from her neck down, radiating into both legs, for the past three days. Tr. 175. Dr. Supan stated in her medical history that she has been disabled since 2003. Tr. 175. His notes further indicate that a straight leg raise test was positive. Tr. 175.

In September 2005, Plaintiff visited the Coastal Carolina Medical Center emergency room with complaints of pain in her left side, neck and foot. Tr. 178. The doctor's discharge summary stated the he suspects plaintiff has degenerative disease of the spine causing neuropathy or pinching nerve roots. Tr. 185. Straight leg raise tests were negative for back pain, and her neck seemed normal upon inspection. Tr. 179. X-rays for her neck and back were normal. Tr. 185. The doctor instructed plaintiff to follow up with her regular doctor for further evaluation. Tr. 185.

State agency psychologists Edward Waller, Ph.D., and Manhal Wieland, Ph.D., reviewed the record and determined that Plaintiff did not exhibit any limitations in functioning due to a mental impairment. Tr. 17`2. They noted that plaintiff's thought process was intact, her thought content was appropriate, her attention and concentration were adequate, and her memory was good. Tr. 172. They did not recommend any further psychiatric treatment. Tr. 172.

State agency doctors James Weston, M.D., and Richard Waymouth, M.D., reviewed the record and determined that plaintiff's impairments were not severe. Tr. 174. They also noted that plaintiff's asthma attacks were infrequent and that her lungs were clear. Tr. 174. Lastly, they stated that plaintiff's musculoskeletal exam and x-rays were without significant objective abnormality. Tr. 174.

Plaintiff stated in a June 2004 Activities Questionnaire that she could not lift, bend or kneel and could not do a lot of walking. Tr. 99-102. Plaintiff further stated that she could drive, but she does not drive long distances. Tr. 99-102. She stated that she handles the financial responsibilities of her household, such as banking and paying bills. Tr. 100. In an April 2005 Activities Questionnaire, plaintiff further stated that family members help her with household chores and grocery shopping. Tr. 92. Plaintiff noted that she sleeps three to four hours a night. Tr. 93. She stated that she can usually dress and groom herself, but sometimes she requires help. Tr. 94.

In April 2005, Connie Eddings, Bessie Greene, and Ethel Brown provided statements on behalf of plaintiff. Tr. 84-89. Ms. Eddings stated that plaintiff had difficulty walking, holding things in her hands, driving, seeing, and hearing. She stated

that plaintiff has a bad memory and that plaintiff's family helps her clean the house. Tr. 84. Ms. Greene stated that plaintiff is in constant pain. Tr. 86. She stated plaintiff cannot stand for very long due to severe pain in her back and knees. Tr. 86. She further stated that plaintiff suffers from depression, panic attacks, asthma, and shortness of breath. Tr. 86. Ms. Brown stated that plaintiff has problems with the left side of her body. Tr. 88. She stated that plaintiff has problems with her back, legs, and hands. Tr. 88. Lastly, she stated that plaintiff is very upset because she cannot do the things she used to do. Tr. 88.

An administrative hearing took place on October 19, 2005, before an ALJ. Tr. 219. Plaintiff testified that she last worked as a desk clerk for a security company and that she could no longer perform that job because she could not sit for long periods of time. Tr. 222. Plaintiff had worked full-time for the same employer since 1973. Tr. 225. Plaintiff also testified that she was having numerous panic attacks and asthma attacks. Tr. 222. She testified that her back and leg pain began after a 1982 car accident. Tr. 223. Plaintiff further testified that her problems were mostly on the left side of her body, stating that she experienced pain in her shoulders and had difficulty turning her neck to the left. Tr. 232.

Plaintiff said that about four times a month, she became really nervous and had an asthma attack followed by a panic attack. Tr. 234. In discussing her asthma, plaintiff testified that she did not use a nebulizer, but she treated her asthma with an Albuterol inhaler and medication. Tr. 231. She said that about two days a week, she had periods of sadness or crying, and that about three or four days a week, she lacked

motivation to get dressed and spent the day lying around and sleeping. Tr. 235. She testified that her depression was worse than when she had been working because she could not get medication. Tr. 234.

Plaintiff stated that she had difficulty sleeping due to pain, and she only got about four or five hours of sleep each night. Tr. 228 Plaintiff stated that she could not walk long distances because of pain and because she would develop shortness of breath. Tr. 223, 231. Plaintiff said she could sit five or ten minutes before she needed to stand and walk around. Tr. 229. Plaintiff stated that she could shower, prepare meals with a microwave, and do laundry. Tr. 237-39. She further stated that she does not do a lot of lifting, and she cannot perform household chores. Tr. 238. She said that she attends church twice a month. Tr. 239.

The ALJ applied the five-step sequential evaluation process for determining whether an individual is disabled in accordance with the Social Security Act. Tr. 17-22. First, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2008. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity at any time relevant to his decision. Tr. 19. At the second step, the ALJ found that plaintiff had the following severe impairments: hypertension, asthma, depression, and low back pain. Tr. 19. At the third step, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19. The ALJ considered the entire record and found that plaintiff's subjective complaints were not fully credible. Tr. 20. At the fourth

step, the ALJ found that plaintiff had the residual capacity to perform light work. Tr. 20. At the fifth step, the ALJ found that plaintiff could perform her past relevant work as a desk clerk and as a housekeeper supervisor, both as she actually performed them and as they were generally performed in the national economy. Tr. 21. The ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act. Tr. 21.

## II.  STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's report to which a specific, written objection is made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140 (1985). This court is not required to review, under a de novo standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. at 149-50. A party's general objections are not sufficient to challenge a magistrate judge's findings. Howard v. Secretary of Health & Human Servs., 932 F.2d 505, 508-09 (6th Cir. 1991). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify the report of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration. 28 U.S.C. § 636 (b)(1).

Although this court reviews the magistrate judge's recommendation de novo, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by

substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" has been defined as,

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Instead, when substantial evidence supports the Commissioner's decision, this court must affirm that decision even if it disagrees with the Commissioner. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456.

### III. DISCUSSION

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations establish a sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine, in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe

impairment; (3) if so, whether that severe impairment meets or equals an illness contained in 20 C.F.R. Part 4, Subpart P, Appendix 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the impairment prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his remaining physical and mental capabilities (defined as Residual Functional Capacity or "RFC") and his vocational capabilities (age, education, and past work experience) to adjust to a new job. Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 20 C.F.R. § 416.920). The applicant bears the burden of production and proof during the first four steps of the inquiry. Pass, 65 F.3d at 1203 (citing Hunder v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). If the sequential evaluation process proceeds to the fifth step, the burden shifts to the Commissioner to show that other work is available in the national economy that the claimant should perform. Id.; see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (discussing burden of proof).

## A. Past Relevant Work

In this case, the ALJ determined that plaintiff was capable of performing past relevant work as a desk clerk and housekeeping supervisor. Tr. 21. The magistrate judge found that, in evaluating whether plaintiff could return to past relevant work, the ALJ "failed to discuss any medical evidence of impairments related to the plaintiff's ability to meet the physical and mental requirements of the plaintiff's past relevant work, as required by Social Security Ruling 82-62." Magistrate's Recommendation and Report

11

(cited herein as Report) at 9. In assessing a claimant's ability to return to her past relevant work, the ALJ must make the following findings of fact: (1) a finding of fact as to the claimant's residual functional capacity; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's residual functional capacity would permit a return to her past job or occupation. See SSR 82-62, 1982 WL 31386, at *4.

Social Security Ruling 82-62 states that "any determination with respect to a claimant's ability to perform past relevant work must be developed and explained fully in the disability decision" and "that every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." May v. Bowen 663 F. Supp. 388, 390 (D. Me. 1987) (citing SSR 82-62, 1982 WL 31386, at *3). Furthermore, a determination of the claimant's ability to do past relevant work requires "a careful appraisal" of (1) the claimant's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) the medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy. Id.

In this case, the magistrate judge found that substantial evidence supports the ALJ's finding that plaintiff had the residual functional capacity to perform light work. The magistrate judge found that the ALJ considered work reports completed by plaintiff regarding her past relevant work and the physical and mental requirements of such jobs.

However, the ALJ failed to discuss any medical evidence of impairments related to plaintiff's ability to meet the physical and mental requirements of the plaintiff's past relevant work, as required by Social Security Ruling 82-62. Report at 9. Accordingly, the magistrate judge found that the ALJ's decision was deficient and could not be adequately reviewed by the court. Report at 9.

The ALJ considered plaintiff's most recent employment as a desk clerk. Tr. 21. As a desk clerk, plaintiff was required to spend much of her time sitting down and not lifting any significant weight. Tr. 21. She also spent much of her time doing paperwork, answering the telephone, and supervising others. Tr. 21. The magistrate judge concluded that although it was clear the ALJ considered plaintiff's past work in relation to her residual functional capacity of light work, he failed to make a connection between the medically determinable impairments and the residual functional capacity determination. Report at 10.

The government objects to the magistrate judge's Report and Recommendation, arguing that (1) the ALJ properly performed a residual functional capacity assessment, which included a discussion of the medical evidence of record; (2) substantial evidence supports the ALJ's finding that plaintiff had the residual functional capacity to perform light work; (3) the ALJ also made findings regarding the requirements of plaintiff's past work as a housekeeping supervisor and as a desk clerk; (4) the ALJ properly concluded that plaintiff's residual functional capacity would permit her to return to her past relevant work. The government further contends that "the residual functional capacity to meet the physical and mental demands of jobs a claimant has performed in the past is generally a

sufficient basis for a finding of 'not disabled.'" See SSR 82-62, 1982 WL 31386, at *3. The government argues that although the ALJ did not consider medical evidence in assessing whether plaintiff could return to her past relevant work, the ALJ did consider and discuss the medical evidence in evaluating plaintiff's residual functional capacity, which is part of the past relevant work analysis.

Social Security Ruling 82-62 clearly states that the decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. SSR 82-62, 1982 WL 31386, at *3. This Social Security Ruling further states that since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit. Id. The Social Security Ruling states:

> Sufficient documentation will be obtained to support the decision. Any case requiring consideration of past relevant work will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work.)
>
> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. In addition, for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, in order to determine if the claimant's mental impairment is compatible with the performance of such work.

Id. The ALJ's explanation of the decision must describe the weight attributed to the pertinent medical and nonmedical factors in the case.

In this case, the ALJ properly evaluated the record and made a finding of fact as

to the claimant's residual functional capacity. The ALJ considered all of the medical evidence, as well as the testimony of plaintiff in regard to her physical and mental impairments. The ALJ's finding that plaintiff has the residual functional capacity for light work is clearly documented. The ALJ stated that plaintiff's impairments were insufficient to be considered significantly limiting nonexertional limitations within the meaning of the Social Security Act. Report at 7. The magistrate judge concluded that there is no evidence that these impairments limited plaintiff's ability to perform her past relevant work as a desk clerk as it is performed in the national economy, and could not determine that the ALJ failed in reaching or explaining that conclusion. Report at 8.

After finding plaintiff had the residual functional capacity for light work, the ALJ discussed the physical requirements of plaintiff's work as a desk clerk and housekeeping supervisor. Tr. 21. The ALJ discussed the physical requirements of plaintiff's past work as described by plaintiff in her testimony and in the record. Tr. 21. After evaluating and explaining the findings of fact regarding plaintiff's residual functional capacity and the physical requirements of plaintiff's past work, the ALJ found that plaintiff was able to perform both jobs as she actually performed them and as they are generally performed in the national economy. Tr. 21. However, the ALJ failed to discuss any medical evidence of impairments related to plaintiff's ability to meet the physical and mental requirements of plaintiff's past relevant work, as required by Social Security Ruling 82-62. As the magistrate judge noted, the connection between the medically determinable impairments and the ALJ's decision that plaintiff can perform her past relevant work is missing. Therefore, the ALJ's decision is deficient according to Social Security Ruling 82-62 and

20 C.F.R. § 404.1520, and cannot be adequately reviewed by the court.

## B. Work History/Credibility

If a claimant has a good employment history, she is entitled to substantial credibility with regard to her disability and the reasons she gives for no longer being able to work. Carrillo v. Heckler, 599 F. Supp. 1164, 1170 (S.D.N.Y. 1984) (citing Rivera v. Schweiker, 717 F.2d 719, 725 (2nd Cir. 1980)); see also Vitaek v. Finch, 438 F.2d 1157, 1159 (4th Cir. 1971); Phares v. Commissioner of Social Security, No. 3:07CV90, 2008 WL 2026097, at *13 (N.D. W. Va. 2008); Nanny v. Mathews, 423 F. Supp. 548 (E.D. Va. 1976). Specific findings are necessary if a claimant's testimony is to be found not credible. Smith v. Heckler, 782 F.2d 1176 (4th Cir. 1986); Hammond v. Heckler, 765 F.2d 723 (4th Cir. 1985).

Social Security Ruling 96-7p states "an assessment of the credibility of a plaintiff's statements about pain must be based on a consideration of all the evidence in the case record. This includes plaintiff's prior work record and efforts to work." 20 C.F.R. § 404.1529 further states that in evaluating a plaintiff's credibility in reference to testimony of pain, the ALJ will consider all of the evidence presented, including information about plaintiff's prior work record, plaintiff's statements about symptoms, and evidence submitted by plaintiff's treating or nontreating sources.

In this case, the ALJ stated that he considered the entire record in finding plaintiff's testimony was not entirely credible. Tr. 20. However, the record clearly indicates that plaintiff had a very good work history with Sea Pines Plantation where she had been continuously employed since 1973. Tr. 225. The ALJ did not mention

16

plaintiff's work record anywhere in the disability decision or the credibility determination.

Some district courts have upheld the ALJ's credibility determination where the ALJ failed to note a plaintiff's work history. See Laws v. Astrue, No. 3-08CV722, 2009 WL 3270770, at *8 (E.D. Va. 2009); Weber v. Barnhart, No. 05-1589, 2005 WL 2862235, at *3 (E.D. Pa. 2005). However, courts have long recognized that Social Security Ruling 96-7p and 20 C.F.R. § 404.1529 require the ALJ to at least consider a plaintiff's good work record in their credibility determination, as a claimant with a good employment history is entitled to substantial credibility. Carrillo v. Heckler, 599 F. Supp. 1164, 1170 (S.D.N.Y. 1984) (citing Rivera v. Schweiker, 717 F.2d 719, 725 (2nd Cir. 1980)). The ALJ in this case failed to even mention plaintiff's uninterrupted thirty-year work history with Sea Pines Plantation. Accordingly, the ALJ failed to consider all of the relevant evidence in his evaluation of plaintiff's credibility.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Commissioner's decision to deny plaintiff disability benefits is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this order and opinion.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
CHIEF UNITED STATES DISTRICT JUDGE**

**March 2, 2010
Charleston, South Carolina**